IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH WILLIAM ATWELL,    :
            Petitioner,    :
                           :     1:15-cv-1583
      v.                   :
                           :     Hon. John E. Jones III
JAY LANE, ACTING           :
SUPERINTENDENT, PA         :
ATTORNEY GENERAL et al.,   :
                           :
            Respondents.   :

## MEMORANDUM

### July 10, 2017

Petitioner Joseph William Atwell ("Petitioner" or "Atwell"), a prisoner currently confined at the State Correctional Institution at Graterford, Pennsylvania, files the instant petition (Doc. 1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254, following affirmance of his convictions for First Degree Murder and Conspiracy, Kidnapping and Conspiracy, and related weapon offenses. For the reasons that follow, the petition for writ of habeas corpus will be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Following a jury trial in the Court of Common Pleas of Pike County, Pennsylvania, Atwell was convicted of First Degree Murder, 18 PA.C.S.A. § 2502(a.), Kidnapping, 18 PA.C.S.A. § 2901(a)(3), two counts of conspiracy, 18 PA.C.S.A. § 903(a)(1), one count of firearms not to be carried without a license, 18

PA.C.S.A. §6106(a)(1), and possessing instruments of crime, 18 PA.C.S.A. §

907(c). (Doc. 23-19, p. 2, n. 1). In a separate bench trial, he was convicted of

persons not to possess firearms, 18 PA.C.S.A. § 6015(a)(1). (*Id.*) On June 24,

2010, he was sentenced to life imprisonment plus an aggregate sentence of not less

than 41 years nor more than 104 years. (Doc. 23-19, p. 3).

The Superior Court, in considering Atwell's appeal from his Judgment of

Sentence, adopted the following factual and procedural background set forth in the

trial court's opinion:

> In May of 2007, [Joseph Atwell] was operating a substantial cocaine
> distribution operation out of his home in Forks Township,
> Northampton County. Jesus Rosario-Torres and Norman "Carolina"
> Domenech were two of his associates who aided in this operation.
> During the early morning hours of May 31, 2007, Atwell, Torres and
> Domenech were at Atwell's house. Atwell and Torres told Domenech
> that the three of them needed to go do a job. They drove in Atwell's
> car to the wooded entrance of the Bear's Den Hunting Club in Porter
> Township, Pike County. Atwell, Torres and Domenech exited the
> vehicle and proceeded on foot some distance away from the road.
> Atwell and Torres then shot Domenech multiple times and left him at
> the scene.
>
> Domenech's body was subsequently discovered by a group of men
> visiting the Bear's Den Hunting Club. The resulting investigation led
> police to Atwell, who home was Domenech's last known address[,]
> and eventually to Torres. They were both charged with murder in the
> first degree [and related charges].
>
> The Commonwealth filed appropriate notices of its intent to try Torres
> and Atwell jointly and its intention to seek the death penalty in both
> cases. A jury trial was held over seven days beginning on April 29,

2010. The jury convicted both defendants of Murder in the First Degree, Conspiracy to Commit Murder in the First Degree, Kidnapping and Conspiracy to Commit Kidnapping. [Atwell was also convicted of possessing a firearm without a license, persons not to possess a firearm and possession of an instrumentality of crime.]

The penalty phase of the trial occurred over four days. Upon deliberating for several hours, however, the jury was unable to reach a unanimous decision and expressed to the trial court that further deliberations would be unproductive. The trial court determined that the jury was hopelessly deadlocked and imposed a sentence of life imprisonment on both Torres and Atwell for the crime of murder in the first degree. On the remaining charges, Torres received a total aggregate sentence of not less than 30 years nor more than 60 years [and Atwell received a total aggregate sentence of not less than 41 years nor more than 104 years.]

Torres filed a post-sentence motion which the trial court denied. He then filed a timely notice of appeal on August 12, 2010. [Atwell filed a timely notice of appeal on July 22, 2010].

(Doc. 23-19, pp. 2-3). Atwell sought review of the following issues in his direct appeal to the Superior Court:

1.      Did the trial court err and abuse its discretion in failing to grant Atwell's motion to sever with respect to both the guilt and penalty phases of trial?

2.      Did the trial court err and abuse its discretion in allowing the Commonwealth to introduce as evidence various guns and controlled substances?

3.      Did the trial court err and abuse its discretion in not allowing Atwell to acquire medical records of the Commonwealth's key witness, Megaly Echevarria ("Echevarria") pertaining to an emergency mental health hospitalization?

4. Did the trial court err and abuse its discretion in not allowing Atwell to question Echevarria about a recent emergency mental health hospitalization?

5. Did the trial court err and abuse its discretion in not allowing Atwell to question Echevarria regarding continue criminal activity and other incidents of conduct?

6. Did the trial court err and abuse its discretion in allowing the Commonwealth to introduce as evidence a pistol that was not the murder weapon?

7. Did the trial court err and abuse its discretion by refusing to read Atwell's proposed jury instruction concerning the introduction of gun and drug evidence?

(Doc. 23-16, pp. 36, 37). The Superior Court affirmed Atwell's Judgment of Sentence on September 13, 2011. (Doc. 23-19).

Thereafter, he filed a Petition for Allowance of Appeal seeking review of only a few of the issues he initially raised. He questioned "[w]hether the Pennsylvania Superior Court erred by upholding the conviction of the Petitioner for murder in the first degree, and various lesser charges, where such conviction occurred during a joint trial with a co-defendant, which trial should have been severed both as a result of prejudice during trial and potential prejudice during the penalty phase of the proceedings[,]" and asserted that "[t]he Pennsylvania Superior Court erred by upholding the conviction of the Petitioner for murder in the first degree, and various lesser charges, where such conviction was based on the

admission of numerous items of prejudicial evidence."  (Doc. 23-20, pp. 7, 10, 15).

The Pennsylvania Supreme Court denied the Petition for Allowance of Appeal on

February 1, 2012.  (Doc. 23-21).

Atwell timely filed a Post Conviction Relief Act ("PCRA") petition pursuant

to 42 PA.C.S. §§ 9541-9546.  Appointed counsel twice amended the petition.

(Doc. 23-26, p. 2).  The second amended petition contained four claims alleging

ineffective assistance of trial counsel.  Claims one and two concerned trial

counsels' advice on plea offers.  (*Id.*)  The third issue raised trial counsels' failure

to object to the introduction into evidence of a "White Resistance Manual."  (*Id.*)

The final issue pertained to trial counsels' failure to call Echevarria's treating

psychiatrist to challenge her competency and credibility.  (*Id.*)  Following a full

hearing, the PCRA court denied the petition on March 14, 2014.  (Doc. 23-26).

Atwell appealed, raising the identical issues he raised in the PCRA court.  (Doc.

23-27, p. 19).  On February 13, 2015, the Superior Court affirmed on the basis of

the PCRA court's opinion.  (Doc. 23-29).  He sought review of the identical

ineffective assistance of counsel claims in his Petition for Allowance of Appeal.

(Doc. 23-30, pp. 10, 11).  The Supreme Court denied the petition on August 12,

2015.  (Doc. 23-31).

Thereafter, Atwell pursued relief in federal court.

## II.  **ISSUES PRESENTED IN FEDERAL PETITION**

The instant petition for federal habeas relief was filed on August 13, 2015.

(Doc. 1).  Atwell seeks relief on the following grounds:

1.  "Severance of trial from Co-defendant, Jesus Rosario-Torres."

2.  "Introduction of controlled substances from prior arrest which were not part of the allegations against the [Petitioner] and for which he was already serving time."

3.  "Introduction of a pistol, which was not the Murder Weapon as well as the story of its hiding by a separate Co-Defendant, Dawn Atwell. Evidence could NOT be tied to the [Petitioner]." (emphasis in original).

4.  "Introduction of several guns at trail which were NOT part of the allegations against [Petitioner], and for which he was already convicted and serving time."  (emphasis in original).

5.  "Not allowing the [Petitioner] to acquire records pertaining to a recent Mental Health Hospitalization sustained by the Commonwealth's primary witness, Megaly Echevarria."

6.  "[The trial court did] [n]ot allow[ ] the [Petitioner] to adequately question the Commonwealth's primary witness, Megaly Echevarria, regarding a recent Mental Health hospitalization."

7.  "[The trial court did] [n]ot allow[ ] the [Petitioner] to question Megaly Echevarria regarding her continued criminal activity, and her other relevant incidents of conduct, after the time of the incidents involved in the criminal information against the [Petitioner]."

8.  "[The trial Court [r]efus[ed] to read a proposed jury instruction provided by the [Petitioner] concerning the effect of the Guns and Drugs introduced at trial and how the Jury could, and could NOT, use

such evidence in determining the guilt or innocence of the [Petitioner]." (emphasis in original).

9. "Counsel misadvised [Petitioner] with respect to plea deals prior to and during trial."

10. "Counsel failed to advise [Petitioner] of certain plea offers before and during trial and instead unilaterally rejected plea offers without [Petitioner's] consent [sic]."

11. "Counsel fail[ed] to object to the admission of the 'White Resistance Manual'."

12. "Counsel fail[ed] to call Megaly Echevarria's treating psychiatric doctors to testify at [Petitioner's] trial, despite being the key witness and having a questionable psychiatric history."

(Doc. 1, pp. 9-22).

## III. **DISCUSSION**

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). Petitioner's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). 28 U.S.C. § 2254, provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

...

     (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

     (1)   unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

     (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding....

28 U.S.C. § 2254. Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely

inconsistent with rudimentary demands of fair procedure.  *See, e.g., Reed v. Farley*, 512 U.S. 339, 354 (1994).

### A.  <u>Non-cognizable Claims</u>

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975) (*per curiam* )."  *Estelle v. McGuire, 502 U.S. 62*, at 67–68 (1991).  "[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984).

In Grounds Two, Three and Four, Atwell alleges that the trial court erred in admitting certain gun and controlled substances evidence.  (Doc. 1, pp. 11, 14, 16).  In reviewing the appropriateness of the admissibility of the evidence, the state court cited to the Pennsylvania Rules of Evidence and applicable state court law.  (Doc. 23-18, pp. 6-11).  In Ground Five, he contends that the trial court erred when it denied his request to acquire medical records concerning Echevarria's alleged emergency mental health hospitalization.  In determining the admissibility of the records, the state court relied on Pennsylvania's patient-psychiatrist privilege,

which is codified at 42 PA.C.S. §5944, and governing state law.  (Doc. 23-18, p.

12).  In Grounds Six and Seven, Atwell asserts that the trial court erred when it

denied him the opportunity to question Echevarria regarding the alleged

emergency mental health hospitalization and her ongoing criminal activity and

other conduct.  In setting boundaries with regard to these lines of questioning, the

trial court relied on Pennsylvania state law governing appropriate cross

examination and impeachment testimony.  (Doc. 23-18, pp. 16-17).  Federal

habeas corpus review is not available to adjudge the correctness of a state court's

evidentiary rulings.  *See Estelle*, 502 U.S. at 67-68.  As such, Atwell's state law

evidentiary claims are not cognizable in federal habeas proceedings.

Raised in his Eighth Ground for relief is that "[the trial court] [r]efus[ed] to

read a proposed jury instruction provided by the [Petitioner] concerning the effect

of the Guns and Drugs introduced at trial and how the Jury could, and could NOT,

use such evidence in determining the guilt or innocence of the[Petitioner]."  (Doc.

1, p. 20) (emphasis in original).  On direct appeal, Atwell challenged the propriety

of the jury instruction on state evidentiary law, not federal constitutional law.

(Doc. 23-16, p. 61).

The state court addressed the issue as follows:

After the Commonwealth introduced evidence of guns, drugs and a white supremacist manual found in Atwell's home, the court gave the following instruction to the jury:

> Earlier today there were pieces of evidence that were placed into the record and I am making specific reference to certain gun and gun related items that were recovered from the home of [Atwell] pursuant to a search warrant. Whether or not this evidence has any relevance to [Torres] will have to be determined by your evaluation of all of the evidence that is presented in this case, your application of good judgment and common sense and the application of the law that I give you to the facts as you find them to be.

> The fact that the evidence was found at [Atwell's] home is not to be taken as evidence of [Torres'] guilt on the underlying charges in this case. You are not to draw an adverse inference against [Torres] simply because these items were found in the Atwell residence. [Torres] is not charged with possession of these items. I ask you to keep that in mind as we proceed further through the case.

N.T. Trial, 5/6/10, at 121-22. Atwell claims that the court, in specifying only that the evidence could not be used to establish Torres' guilt, implicitly suggested to the jury that it could be used to establish Atwell's guilt. However, Atwell fails to note the subsequent instruction provided to the jury, in which the trial court stated as follows:

> The Commonwealth has called witnesses and introduced evidence in this case related to certain drugs, paraphernalia and guns that were recovered from the Atwell residence[.] This evidence may have an inflammatory [e]ffect on you. However, I am directing that you must put aside any inflamed emotions or reactions to such evidence, because that evidence can be considered by you in this case only for limited purposes. I'm going to go through that briefly with you now.

First, the [drug evidence] was admitted to demonstrate motive or opportunity to commit these crimes together with the basis of the relationship and interaction between the various witnesses that were called in this case, their condition at the time of the allege incident and therefore, their ability to recall events.

In addition, there was evidence of guns that was introduced. The evidence of guns was admitted to demonstrate access to guns, the absence of the .380 caliber pistol from the cutout of the case and the Commonwealth's allegation of an attempt to conceal gun evidence as an act in furtherance of the conspiracy. This evidence that I've just described is to be considered by you only for the purposes I've stated. You must not infer guilt on the underlying charges of this case simply because this evidence was recovered from the home of [Atwell].

N.T. Trial, 5/12/10, at 223-25 (emphasis [omitted]).

The trial court clearly delineated the limited purposes for which the jury could consider the gun and drug evidence and specifically directed the panel not to use the evidence as proof of either defendant's guilt on the underlying charges. This instruction, which the jury is presumed to have followed, [*Commonwealth v.*] *Smith*, [995 A.2d 1143, 1163 (Pa. 2010)], was sufficient to cure any potential confusion which the earlier instruction may have caused.

(Doc. 23-19, pp. 7-9). Because "federal courts reviewing habeas claims cannot 'reexamine state court determinations on state law questions,' " Atwell's state law jury instruction challenge is not cognizable in this proceeding. *Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) (quoting *Estelle*, 502 U.S. at 67-68).

**B.    Exhaustion and Procedural Default**

Habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The state courts must have the first opportunity to redress any claimed violation of a habeas petitioner's federal rights.  *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. § 2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court. *O'Sullivan*, 526 U.S. at 845 (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,  . . .  state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard*, 404 U.S. at 275 (1971); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

Relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or

circumstances exist that render such process ineffective to protect the rights of the applicant.  *See* 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  Federal habeas courts " 'will not review a question  of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' " *Lambrix v. Singletary*, 520 U.S. 518, 522 (1997) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).

### 1.    Fair Presentation

In his Memorandum of Law (Doc. 19) and Reply (Doc. 24), Atwell seeks to recreate his state law evidentiary claims contained in Grounds Two, Three and Four as due process claims.  (Doc. 19, pp. 11-14; Doc. 24, pp. 1, 2).   In support, he cites *Lisenba v. California*, 314 U.S. 219 (1941) (Doc. 19, p. 11), which holds that federal habeas review may exist where an evidentiary ruling "so infuse[s] the trial with unfairness as to deny due process of law."  *Lisenba*, 314 U.S. at 228; s*ee also Spencer v. Texas*, 385 U.S. 554, 563–564 (1967) (stating that "[c]ases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial.").

In Ground Eleven, Atwell raises an ineffective assistance of counsel claim with regard to trial counsels' decision to admit the entirety of the White Resistance Manual. In his Memorandum of Law, the issue is expanded to include the argument that "[a] denial of due process of law occurs when evidence admitted in a State court trial results in fundamental unfairness, and the absence of fairness fatally infected the trial." (*Id.* at 28, citing *Lisenba*, 314 U.S. 219). He contends that the White Resistance Manual was highly inflammatory and had little, if any, probative value, and that its admission was fundamentally unfair and in violation of his due process rights. (Doc. 19, pp. 26-29).

Significantly, Atwell failed to present any of these federal claims to the state courts. As noted *supra*, the state courts must have the first opportunity to redress any claimed violation of a habeas petitioner's federal rights. *Picard*, 404 U.S. at 275–76. A petitioner has exhausted a federal claim only if he or she presented the "substantial equivalent" of the claim to the state court. *Picard*, 404 U.S. at 278; *see also McCandless v. Vaughn*, 172 F.3d 244, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal substance" of claim to state courts). The exhaustion requirement would "serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts." *Picard* 404 U.S. at 276. Notably, the federal claims raised in the state courts need not be

identical to the claims now pursued in federal court. *Id.* at 277 (recognizing that petitioner is entitled to "variations in the legal theory or factual allegations used to support a claim").

Review of pertinent state court briefs reveals that the federal issues Atwell now attempts to advance in Grounds Two, Three, Four, and Eleven, were wholly presented as questions of state law, not federal law. (Doc. 23-16, pp. 48-52, 55-61; Doc. 23-20, pp. 15-22; Doc. 23-27, pp. 27-28). The relevant portions of his direct appeal and collateral proceedings briefs are devoid of a single citation or reference to federal or constitutional law. The state courts adjudicated these claims solely as state law claims. (Doc. 23-18, pp. 6-11; 16-22; Doc. 23-26, pp. 7, 8). Consequently, Atwell failed to present these federal claims to the state courts.

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, as is the case here, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' 28 U.S.C. § 2254(b). In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default. *See Coleman v. Thompson*, 501

U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)." *McCandless*, 172 F.3d at 260.

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable

juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

Atwell cannot overcome this procedural default because he does not demonstrate "cause for the default and prejudice attributable thereto," or "that the failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989). *See also*, *Werts*, 228 F.3d at 192-93 (A petitioner can overcome procedural default, and thereby empower the habeas court to entertain the merits of the habeas claim, with a showing of "cause and prejudice" or by demonstrating a fundamental "miscarriage of justice."); *see also Schlup v. Delo*, 513 U.S. 298, 321 (1995) (The miscarriage of justice exception is "explicitly tied...to the petitioner's innocence.").

## 2.    Failure to Exhaust

In the "Non-cognizable Claims" section, *supra*, we deemed the claims contained in Grounds Five through Eight to be non-cognizable in a federal habeas proceeding. To be thorough, even if the claims were determined to raise federal claims, Atwell would not be entitled to relief because he failed to exhaust the claims in the state courts. He initially raised these claims on direct appeal to the Pennsylvania Superior Court. (Doc. 23-16). However, he abandoned them in his

Petition for Allowance of Appeal filed with the Supreme Court of Pennsylvania. (Doc. 23-20, p. 7).

Although the claims are unexhausted, because state procedural rules bar further state court review, exhaustion is excused. *See Wenger*, 266 F.3d at 223; *Lines*, 208 F.3d at 160. However, the claims are considered procedurally defaulted and the merits may not be considered unless the petitioner establishes cause and prejudice or a fundamental miscarriage of justice to excuse his or her default. *See Coleman*, 501 U.S. 722; *McCandless*, 172 F.3d at 260. Atwell cannot overcome procedural default as he does not argue, much less demonstrate, either cause and prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of justice.

### C.  <u>Claims Adjudicated on the Merits by the State Courts</u>

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," *Greene v. Fisher*, 564 U.S. 34, 38 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181(internal quotation marks and citation omitted). The burden is on Atwell to prove entitlement to the writ. *Id.*

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A decision is an "unreasonable application" of federal law if the state court identified the correct governing legal rule but applied the rule to the facts of the case in an objectively unreasonable manner. *Renico v. Lett*, 559 U.S. 766, 773 (2010). A decision is based on an "unreasonable determination of the facts" if the state court's factual

findings are objectively unreasonable in light of the evidence presented to the state court. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## 1. Severance claim

In his first ground for relief, Atwell contends that the trial court erred in failing to sever his trial from that of his co-defendant, Jesus Rosario-Torres. He sets forth the following supporting facts:

> [Petitioner's] Co-defendant made several inaccurate statements to police. [Petitioner's] Co-defendant's odd behavior during trial, such as singing in open court, photographic evidence of Codefendant clearly [ ] demonstrating the misleading statements made to police prior to trial. By trying the two together the commonwealth was able to imply that the two were a team when in fact the two hardly knew each other, and suffered a language barrier, [Petitioner] speaking only English and Torres speaking only Spanish.

(Doc. 1, p. 9).

"There is a preference in the federal system for joint trials of defendants who are indicted together" because joint trials "promote efficiency and 'serve the interest of justice by avoiding the scandal and inequity of inconsistent verdicts.' "

*Zafiro v. United States*, 506 U.S. 534, 537 (1993). "Joint trials conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *United States v. Lane*, 474 U.S. 438, 448 (1986).

"Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Lane*, 474 U.S. at 446 n. 8. Typically, a trial court should grant a severance only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro*, 506 U.S. at 539. The potential for such a risk may arise when co-defendants assert "mutually antagonistic" defenses. *U.S. v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996) (citing *Zafiro*, 506 U.S. at 538). Significantly, mutually antagonistic defenses are not prejudicial *per se*, so as to require severance. *Zafiro*, 506 U.S. at 538.

In considering the issue that "both Atwell and Torres claim the trial court erred in failing to grant motions to sever their trials," the Pennsylvania Superior Court set forth the following standards:

> "Joinder and severance of separate indictments for trial is a discretionary function of the trial court; consequently, the trial court's

decision is subject to review for abuse of that discretion." *Commonwealth v. Brookins*, 10 A.3d 1251, 1255 (Pa. Super. 2010) (citations omitted). An abuse of discretion consists not merely of errors in judgment by the trial court, but instead contemplates action unsupported by the evidence, at odds with governing law, or arising from improper motives personal to the judge. *Id.* The critical consideration is whether the appellant suffered prejudice as a result of the trial court's decision. *Id.* It is the appellant's burden to establish the existence of such prejudice. *Id.*

\*\*\*

Courts should grant separate trials of co-defendants only where the defenses of each are antagonistic to the point where such individual differences are irreconcilable and a joint trial would result in prejudice. [*Commonwealth v. Rainey*, 928 A.2d 215,] 232 [(Pa. 2007).]

(Doc. 23-19, pp. 3-5). This standard is indistinguishable from the Supreme Court requirement that a defendant demonstrate a serious risk that a joint trial would result in prejudice. It also considers that the potential for such a risk arises when co-defendants assert "mutually antagonistic" defenses. Clearly, the law relied on by the state court is in accord with governing Supreme Court precedent.

In concluding that Atwell failed to establish prejudice such that severance was warranted, the Superior Court stated as follows:

We begin by noting that Atwell has not identified with specificity Torres' alleged "odd behaviors" or "inaccurate statements to police" which he claims were prejudicial to his case. Nor has Atwell provided any citations to the record which might serve to elucidate his claims. Atwell's only specific example of allegedly prejudicial evidence involves a statement by Torres that he left Atwell's home

23

> prior to the date of the victim's disappearance, which is belied by
> photographic evidence to the contrary. However, Atwell does not
> explain, and we fail to discern, how Torres' statement was prejudicial
> to Atwell. The statement neither implicates Atwell in wrongdoing,
> nor impugns his credibility. In any event, the trial court instructed the
> jury that any statements made by a defendant may only be considered
> as evidence against the defendant who made the statement. *See* N.T.
> Trial, 5/12/10, at 222. As a jury is presumed to follow a trial court's
> instructions, *Commonwealth v. Smith*, 995 A.2d 1143, 1163 (Pa.
> 2010), Atwell has failed to establish he was prejudiced by Torres'
> statement.

(*Id.* at 6, 7). It is clear that the state court reasonably applied the Supreme Court

precedent in that it correctly identified the governing legal rules and reasonably

applied them to the facts of the case. Atwell is not entitled to relief on this ground.

### 2. Ineffective Assistance of Counsel

Atwell's final four grounds, Nine through Twelve, raise claims of ineffective

assistance of counsel. The test for ineffective assistance of counsel is a well settled

and firmly established one containing two components. "First, the defendant must

show that counsel's performance was deficient. This requires showing that

counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*,

466 U.S. 668, 687 (1984). "Second, the defendant must show that the deficient

performance prejudiced the defense. This requires showing that counsel's errors

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.

These issues were addressed in the context of the PCRA proceedings. The Superior Court identified all of the claims and then affirmed based on the PCRA court's May 6, 2014 Opinion. (Doc. 23-29, pp. 3-4; Doc. 23-26). The PCRA court set forth the following general principles governing ineffective assistance of counsel claims:

> If a defendant files a PCRA petition alleging ineffective assistance of counsel, it is the defendant's duty to rebut the presumption that trial counsel was effective. "…[T]o rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. [*Commonwealth v. Busanet*, 54 A.3d 35], 45 [(Pa. 2012)]; *see also Strickland v. Washington* 466 U.S. 668 (1984). When evaluating a PCRA petition alleging ineffective assistance of counsel the following factors are to be considered and evaluated by the court: the defendant must demonstrate (1) the underlying claim has arguable merit, (2) counsel had no reasonable basis for his action or inaction, and (3) defendant suffered prejudice because of counsel's ineffectiveness. *See Commonwealth v. Pierce*, 567 Pa. 186 (Pa. 2001); *Commonwealth v. Paddy*, 609 Pa. 272 (Pa. 2011); *Commonwealth v. Dennis*, 950 A.2d 945 (Pa. 2008). Failure to satisfy any one of these prongs will result in denial of a defendant's action for ineffective assistance. *See Id.* at 954.
>
> Regarding the second prong, "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Paddy*, supra at 292 (citation omitted). To establish prejudice due to ineffective assistance of counsel, the defendant must show that "but for the act or omission

in question, the outcome of the proceedings would have been different." *Commowealth v. Rios*, 591 Pa. 583, 599-600 (Pa. 2007). Further, "…in a PCRA proceeding, a defendant must establish that the ineffectiveness of counsel was the sort which 'in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" *Id.* at 600 (quoting *Commonwealth v. Pierce*, supra at 221-22).

(Doc. 23-26, pp. 3-4). The United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" Strickland. *Werts*, 228 F. 3d at 203. Therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim[s] was objectively unreasonable, *i.e.*, the state court decision evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland*." *Id.* at 204.

> a.    Plea Offers

In Grounds Nine and Ten, Atwell alleges that trial counsel misadvised or failed to advise him of certain plea offers prior to and during trial and unilaterally rejected plea offers without his consent. (Doc. 1, p. 21). He argues that "counsels['] failure to provide <u>accurate</u> <u>and</u> <u>candid</u> advice relative to the strength of the Commonwealth's case relative to the plea offer rendered deficient performance, which led to Petitioner's rejection of a good offer." (Doc. 19, p. 24) (emphasis in original).

He raised these issues in the PCRA proceedings. (Doc. 23-26, p.p. 4-7).

The PCRA court first noted, in accordance with applicable United States Supreme

Court precedent, that to meet the prejudice prong of *Strickland* in the context of

plea offers, "the defendant must show, 'that but for the ineffective advice of

counsel there is a reasonable probability that the plea offer would have been

presented to the court (*i.e.*, that the defendant would have accepted the plea and the

prosecution would not have withdrawn it in light of intervening circumstances),

that the court would have accepted its terms, and that the conviction or sentence, or

both, under the offer's terms would have been less severe than under the judgment

and sentence that in fact were imposed.' *Commonwealth v. Feliciano*, 69 A.3d

1270, 1276-77 (Pa. Super. Ct. 2013) (quoting *Lafler v. Cooper*, 132 S.Ct 1376,

1385 (2012))." (Doc. 23-26, at 4).

The PCRA court's opinion contains the following recitation of the hearing

testimony of trial counsel:

> Both trial counsel were clear in their testimony that the only offer they received was the fifteen (15) to thirty (30) year offer that was communicated directly to Defendant. Counsel indicated that this offer was both initially discussed with Defendant and it was later discussed with the Defendant and the mitigation expert hired for the penalty phase of the trial. *H.T.* pg. 31 lines 6-22. Certainly, during these discussions there was also discussion of the strength of the Commonwealth's case between Defendant and counsel. Attorney Sauerman indicated that he explained the risks of going to trial to Defendant and they discussed the overall strengths and weaknesses in

the case.  *H.T.*, pg. 29 lines 2-20.  However, both counsel indicated that the final decision on the offer was exclusively in Defendant's control.  The offer was evaluated prior to and during trial and it was consistently rejected by Defendant.  *See e.g. H.T.*, pg. 44 lines 9-20 ("Q:  The decision to reject the pleas offers that was his decision?  A:  That was his decision.  I know we would have talked about the relative merits of the case as I previously said to counsel, it was his decision.").

The attorneys testified that Defendant's rejection of the offer was based upon their overall discussions and Defendant's claim of innocence as well as certain concerns he had for his wife who was also charged with various offenses related to this matter.  *See H.T.*, pgs. 23-25. Defendant failed to provide evidence that it was counsel's advice which caused him to reject the offer and that but for this advice he would have accepted the fifteen (15) to thirty (30) year offer.  In fact, Attorney Anders testified that Defendant maintained his innocence through trial and even after the guilty verdict.  *H.T.*, pg. 9 lines 4-9.

(Doc. 23-26, p. 6).

Conversely, Atwell's testimony was found to be not credible.  "While [Atwell] made claims that there was another 'undefined' plea offer made near the beginning of trial, no evidence of any such offer was presented at the hearing. Further, [Atwell] has made a vague claim that trial counsel unilaterally rejected a plea offer, but no evidence of any such offer was presented."  (*Id.* at 5).  Atwell could "not identify the specifics of the offers he discussed with his attorneys and offered no evidence of the other offers he claims existed."  (*Id.* at 5).

The PCRA court concluded that "[i]n weighing the [PCRA hearing] testimony, we find it is clear that counsel presented the Commonwealth's offer to Defendant, continuously discussed said offer, advised him of the consequences, and allowed Defendant to make an informed decision to accept or reject it. Having presented no credible evidence to support the claim that counsels' ineffective representation concerning plea offers prejudiced him, Defendant's petition on these matters must be denied." (Doc. 23-26, pp. 6-7). (*Id.* at 4-6). Atwell has failed to rebut the presumption of correctness afforded the PCRA court's determination of the factual issues.

Based on the above, it is clear that the state courts' adjudication of Atwell's plea offer claims resulted in a decision that was based on a reasonable determination of the facts in light of the evidence presented at the PCRA hearing. Consequently, Atwell is not entitled to relief.[1]

### b. Admission of "White Resistance Manual"

Atwell contends that trial counsel were ineffective in failing to object to the admission of the "White Resistance Manual" into evidence which, according to the

---

[1] At the tail end of his argument, Atwell asserts that PCRA counsel was ineffective in failing to call his Capital Mitigation Specialist, Juliet M. Yackel ("Yackel"), to testify about the plea offer. (Doc. 19, pp. 24-25). Ineffective assistance of PCRA counsel, is not cognizable on federal habeas review because there is no constitutional right to counsel in state collateral proceedings. 28 U.S.C. § 2254(i) (stating that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Coleman*, 501 U.S. at 752–53; *Pennsylvania v. Finley*, 481 U.S. 551, 555–56 (1987). No further discussion of the issue is warranted.

PCRA court, contained information regarding the commission of crimes and the

process by which evidence of crimes could be concealed. (Doc. 1, p. 22; Doc. 19,

p26-29; Doc. 23-26, p. 7). The PCRA court concluded as follows:

> We initially note that defense counsel did object to the admission of [the manual] into evidence.
>
> ***
>
> Based on the credible testimony of both attorneys, it is clear that after the court ruled that portions of [the] Manual would be admitted[,] counsel made a strategic decision to attempt to lessen the impact of this evidence on the jury [by agreeing to the admission of the whole manual being admitted so it would not be taken out of context]. Whether or not Defendant agrees with this strategy, he has failed to offer evidence demonstrating that counsel had no reasonable basis for this action. Additionally, Defendant hasn't offered proof that had the attorneys further objected to the manual and only the Commonwealth's selected portions of the text were admitted, there would have been a substantially greater potential for success. Defendant's failure to demonstrate that counsel had no reasonable basis for their action or inaction bars his claim for relief on this matter.

(Doc. 23-26, pp. 7- 8). Atwell argues that the manual was "highly prejudicial and

inflammatory along with a total lack of probative value," but fails to demonstrate

that the state courts' reasoned analysis of the trial counsels' strategic decision, to

allow the entire manual into evidence, resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented at the

PCRA hearing. No relief is warranted on this claim.

### c.    Failure to Call a Witness

Finally, in Ground Twelve, Atwell alleges that counsel was ineffective for failing to subpoena and call the treating psychiatrist of the Commonwealth's key witness,  Echevarria, to testify about Echevarria's alleged emergency mental health hospitalization.  (Doc. 1, p. 22).

Atwell's contention that trial counsel was ineffective for failing to subpoena or call the treating psychiatrist of Echevarria is wholly contradicted by the state court record.  Specifically, the PCRA court noted that defense counsel filed motions and sought a subpoena to obtain medical and mental health records of Echevarria and to call her treating psychiatrists as witnesses.  (*Id.* at 9).  In response, First Hospital in Wyoming Valley filed a Motion for Protective Order with regard to the records subpoena and Echevarria filed a Motion to Quash the subpoena to testify.  (*Id.* at 9, n. 4).  "[B]ased upon all applicable law, [the trial court] concluded that such information from [Echevarria's] psychiatrists was not to be disclosed and that her psychiatrist would not be allowed to testify."  (*Id.* at 9).  The issue was also pursued on direct appeal.  (*Id.*).  The PCRA court pointed out that the issue was fully litigated prior to and during the trial and that "[c]ertainly, defense counsel raised these issues at the appropriate times and they were not ineffective given their direct attention to this matter."  (*Id.* at 9, 10).

The PCRA court alternatively considered Atwell's contention that counsel was ineffective in failing to call Echevarria's treating psychiatrist. An evaluation of the failure on the part of defense counsel to call witnesses falls squarely within the first prong of *Strickland*, which pertains to whether the attorney made his tactical decisions "in the exercise of reasonably professional judgment." *Strickland,* 466 U.S. at 690.  The PCRA court concluded that Atwell failed to meet his burden in that he failed to prove that the unnamed witness existed, was available and willing to testify, or that this testimony denied him a fair trial.[2]  (*Id.* at 10).  The court then concluded that "[b]ecause Defendant has not met his burden of demonstrating that counsel was ineffective for failing to call this unknown witness or that he is entitled to relief under the prongs of the *Pierce* test, [the state court equivalent to *Strickland*] his petition concerning this issue is denied."

Based on the above, we conclude that the state courts' adjudication of this ineffective assistance of counsel claim resulted in a decision that was based on a reasonable determination of the facts in light of the evidence presented.  Atwell's request for relief on this ground is denied.

---

[2] The PCRA court stated that "[t]o establish that counsel was ineffective for failing to call a witness, Appellant must demonstrate that:  (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness was so prejudicial as to have denied the defendant a fair trial *Commonwealth v. Washington*, 592 Pa. 698, 721 (Pa. 2007)." (Doc. 23-26, p. 10).

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322 (2003). Petitioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Atwell from appealing the order denying his petition so long as he seeks, and obtains, a certificate of appealability from the Third Circuit Court of Appeals. *See* FED. R. APP. P. 22(b)(1).

## V. CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

A separate order will enter